

**IN THE
TENTH COURT OF APPEALS**

**No. 10-20-00232-CV**

**IN THE INTEREST OF G.O., P.O., AND L.O., CHILDREN**

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2019-1827-3**

## MEMORANDUM OPINION

William O. and Emily O. appeal from the trial court's order terminating their parental rights to their children, G.O., P.O., and L.O. After hearing all the evidence, the trial court found by clear and convincing evidence that both William and Emily (1) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children, and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children. TEX. FAM. CODE ANN. § 161.001 (b) (1) (E) (O) (West Supp. 2019). The trial court further found by clear and convincing evidence that termination was in the best

interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West Supp. 2019). We affirm.

## BACKGROUND FACTS

William and Emily moved to Texas from Las Vegas, Nevada with their three children in the spring of 2019. The Texas Department of Family and Protective Services became involved with the family May 22, 2019, over allegations William physically abused G.O. and P.O. G.O. missed two days of school, but during those days she was seen in the car with William with bruising on her neck and a bloody lip. When school personnel asked P.O. why G.O. was not in school, P.O. stated that William "flipped" G.O. and kicked her hard with his boots. When G.O. returned to school, she told a Department worker that her dogs caused the injuries. G.O. later admitted that William hit her in the face and choked her. G.O. continued to give conflicting stories on how she was injured.

The Department asked P.O. if she had any bruises. P.O. pointed out several bruises, but indicated the dog caused the bruises. The Department found that the bruises were not consistent with dog bites. L.O., who was four years-old at the time, was also observed to have marks and bruises. L.O. stated that his dogs "kick him and pinches him hard." G.O. and P.O. both also related incidents of William physically abusing Emily.

The children were removed from the home and went to live with Cynthia and Gary, Emily's mother and stepfather, in Las Vegas, Nevada. While living with Cynthia and Gary, G.O. made an outcry of sexual abuse by William.

## STANDARD OF REVIEW

Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard all evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably

have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

## FATHER'S APPEAL

In his sole issue, William argues that the evidence is legally insufficient to support the trial court's finding that termination is in the best interest of the children. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App. —Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

At the time of the final hearing, G.O. was 9 years-old, P.O. was 7, and L.O. was 5. The children are at a young age, but they did express a desire to return home to their parents. However, there was testimony at trial that G.O. wanted assurance from Emily that G.O. would be safe from sexual abuse by William. There was also testimony that P.O. does not feel safe with William.

The record shows that William was physically abusive to the children. William denied abusing the children and told conflicting stories on how the children received their injuries. Although William attended a batterer intervention program, he does not acknowledge any wrongdoing on his part. G.O. made specific allegations of sexual abuse against William. The evidence raises concerns for the children's emotional and physical needs as well as concerns for their emotional and physical safety with William.

At the time the children were removed, the home was chaotic and in disarray. G.O. and P.O. were not doing well in school. Emily's mother, Cynthia, testified that when the children were placed in her home they were aggressive, destructive, and would not listen to instruction. William participated in parenting classes, but did not demonstrate that he was willing to make changes in his parenting. William obtained employment and stable housing for the children.

In their current placement, the children have a stable and safe environment. Cynthia testified that G.O. and P.O. have improved in their schoolwork, and the children

are better behaved and less aggressive. The children receive counseling services. The children are bonded to their current caregivers.

Viewing all of the evidence in the light most favorable to the trial court's finding, we find that the evidence is legally sufficient to support the trial court's finding that termination of William's parental rights is in the best interest of the children. We overrule William's sole issue on appeal.

### MOTHER'S APPEAL

In her first issue, Emily argues that the evidence is legally and factually insufficient to support the trial court's finding that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children. Section 161.001 (b) (1) (E) requires a finding of endangerment. To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In the Interest of E.M.*, 494 S.W.3d 209, 221 (Tex. App. —Waco 2015, pet. den'd). Under subsection (E) it can be either the parent's conduct or the conduct of person with whom the parent knowingly leaves

the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

G.O. and P.O. both showed signs of physical abuse. P.O. said that William hit G.O. in the face. G.O. and P.O. later gave conflicting stories of how they were injured. When the physical abuse was reported to Emily, she explained that G.O. says things that are not true and that G.O. is the "ringleader" of the children. Emily testified at trial that the bruises on the children did not come from William. G.O. and P.O. both reported witnessing domestic violence between Emily and William. Emily denies any domestic violence, but Emily was arrested in Nevada for domestic violence after an altercation with William.

G.O. also made an outcry of sexual abuse to Cynthia and to Kimberly Witt, a conservatorship specialist with the Department. G.O. said that William made her massage his privates and that he "peed" on her and white stuff came out. Emily testified at trial that she does not believe the allegations of sexual abuse.

Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In the Interest of E.M.*, 494 S.W.3d at 222. Abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *Id*. The

record shows that there was abusive and violent conduct in the home. We find that the evidence is legally and factually sufficient to support the trial court's findings that Emily engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children. TEX. FAM. CODE ANN. § 161.001 (b) (1) (E) (West Supp. 2019). We overrule Emily's first issue on appeal. Because we find that the evidence is sufficient under Section 161.001 (b) (1) (E), we have addressed the concerns of protecting Emily's due process and due course of law rights. *See In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019). We need not address the second issue on appeal.

In the third issue, Emily argues that the evidence is legally insufficient to support the trial court's finding that termination is in the children's best interest. The children are all bonded to Emily and want to return to her. G.O. has expressed concern for her safety with William and also concern for Emily's safety with William. The children's therapist testified that the children have become "parentified" meaning they feel it is their responsibility to care for Emily.

Emily testified that she does not believe William sexually abused G.O. or that he physically abused any of the children. The children's therapist expressed concern that Emily would not be able to protect the children from William. Emily continued to have a relationship with William and stated that she wants to reunite with him. Emily testified that her children are safe with William. The CASA representative testified at trial that Emily's rights should be terminated because she cannot protect the children and the

abuse will continue with William. Kimberly Witt, with the Department, also testified that there are concerns Emily cannot protect the children from William's abuse. Although there was testimony that G.O. would feel guilt if Emily's rights were terminated, both Witt and the CASA representative recommended termination.

Emily was initially active in participating in services. However, she later changed and did not want to participate in the services. She did not provide proof she was attending counseling. Emily testified that she would obtain counseling for the children if they are returned to her. Emily was not currently employed and did not provide evidence of stable housing for the children.

The children are bonded to their current caretakers. Their academic performance has improved, and their behavior has improved. Witt testified that she has no concerns with the current placement. Viewing all of the evidence in the light most favorable to the trial court's finding, we find that the evidence is legally sufficient to support the trial court's finding that termination of Emily's parental rights is in the best interest of the children. We overrule Emily's third issue.

In the fourth issue, Emily argues that the trial court erred in admitting the hearsay statement of G.O. The State asked Cynthia when she first learned of the physical abuse. Cynthia began to answer what she was told by G.O., and trial counsel objected to hearsay. The trial court conducted a hearing on the admissibility of the statements and found they were admissible under Section 104.006 of the Texas Family Code. Cynthia then testified

that G.O. said William hit her in the mouth twice and that it hurt so bad she could not eat. Cynthia also testified about G.O.'s allegation of sexual abuse.

The Texas Family Code permits the admission of hearsay statements by child abuse victims in termination of parental rights proceedings. *See* TEX. FAM. CODE ANN. § 104.006 (West 2019). Section 104.006 provides that, under certain circumstances, a statement made by a child twelve years of age or younger that describes alleged abuse against a child is admissible. The statute allows admission of such a statement, providing: (1) the court finds the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability, and (2) the child testifies or is available to testify at the proceeding in the court, or in any manner provided for by law, or the court determines that the use of the statement in lieu of the child's testimony is necessary to protect the welfare of the child. *Id*. Here, the trial court found that the use of the statement in lieu of the child's testimony is necessary to protect G.O.

Section 104.006 requires the trial court to determine "that the time, content, and circumstances of the statement provide sufficient indications of the statement's reliability." In *In the Interest of E.M.*, this Court found that the analysis provided in case law relating to Article 38.072 of the Code of Criminal Procedure in determining reliability is an appropriate guide for courts to follow in determining reliability pursuant to Section 104.006. *In the Interest of E.M.*, 494 S.W.3d at 218-219. In making its determination of reliability pursuant to Section 104.006, just like in Article 38.072, the focus of the inquiry

must remain upon the outcry statement, not the abuse itself. *In the Interest of E.M.*, 494 S.W.3d at 219.

The trial was before the trial court, and the trial court conducted a hearing on the admissibility of the statements. The trial court noted that it had conducted numerous hearings regarding the children and was aware of the circumstances relating to the outcry statements and the reliability. The trial court found that the statements met the exception set out in Section 104.006. We do not find that the trial court abused its discretion in admitting the statements. We overrule Emily's fourth issue.

## CONCLUSION

We affirm the trial court's order terminating the parental rights of William and Emily to their children.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed December 16, 2020
[CV06]

